## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lori Irish,                                    Civ. No. 11-2703 (MJD/JJK)

      Plaintiff,

v.

United States Department of Justice,           **REPORT AND**
Federal Bureau of Prisons, Officer             **RECOMMENDATION**
Pena, Lieutenant Duncan, Lieutenant
Omelson, Unknown Federal Bureau of
Prison Employees, and Officer G. Duffy,

      Defendants.

Lori Irish, 3935 West Reno, Suite D, Las Vegas, NV 89118, *pro se* plaintiff.

Lonnie F. Bryan, Esq., Assistant United States Attorney, counsel for defendants.

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION AND PROCEDURAL HISTORY

In this case, the plaintiff, Lori Irish, brings claims that arise from her time

spent serving a prison term at the Federal Correctional Institution in Waseca,

Minnesota ("FCI Waseca").   Irish asserts claims under the Federal Torts Claims

Act ("FTCA") and against individual federal corrections officers for alleged

violations of her constitutional rights under *Bivens v. Six Unknown Named Agents*,

403 U.S. 388 (1971).   She claims that the defendants are liable under the FTCA

and *Bivens* for failing to provide her appropriate medical care, denying her access

to an adequate law library at the prison, forcing her to engage in dangerous

manual labor, retaliating against her for reporting incidents of sexual abuse at the prison, and harassing her during a deposition she did not agree to attend. Whether those claims can go forward in this lawsuit is the subject of this report and recommendation.

Before turning to that focus, the Court describes the relevant procedural history of this case.   Irish commenced this case in September 2011.   (Doc. No. 1.)   On May 23, 2012, the defendants moved to dismiss Irish's claims, or in the alternative, for summary judgment on those claims.   (Doc. No. 42.)   This Court recommended that the defendants' motion be granted in January 2013, and in doing so treated the motion as one for summary judgment by considering materials submitted by the defendants that were not in the pleadings.   (Doc. No. 52.)   After Irish filed no objections within the time period permitted, the District Court adopted this Court's recommendation on February 6, 2013.   (Doc. No. 56.) Irish then moved for reconsideration of the District Court's order, but that motion was denied.   (Doc. No. 59.)

Irish appealed the Court's judgment dismissing all of her claims.   (Doc. No. 60, Notice of Appeal.)   On appeal, Irish argued that the orders dismissing her case and denying her motion for reconsideration were improper because she had not received a copy of the defendants' submissions in support of its motion to dismiss or for summary judgment.   On May 2, 2014, the Eighth Circuit Court of Appeals reversed the order denying Irish's request for reconsideration and

2

vacated the order granting summary judgment in favor of the defendants.   The

Eighth Circuit also instructed the District Court on remand to require the

defendants to send Irish a complete set of the materials supporting their

summary-judgment motion and to allow Irish a reasonable amount of time to

prepare a response to the defendants' motion.   (Doc. No. 71, Opinion 3-4.)

On June 24, 2014, after the Eighth Circuit issued its mandate, the District

Court ordered the defendants to file and properly serve Irish with a complete set of

their motion papers.   (Doc. No. 74.)   The defendants complied with that order,

filing a renewed motion and supporting documents in the same form they had

previously filed.   (*See* Doc. Nos. 75-83.)   The defendants also filed a certificate

on July 14, 2014, indicating that they had mailed the following materials to Irish: the

motion; a memorandum in support of the motion; a certificate of word-count

compliance; an exhibit list; and six declarations, along with referenced exhibits

supporting the motion.   (Doc. No. 85.)

On September 3, 2014, Irish requested additional time to file her response to

the defendants' motion, which the Court granted the same day.   (Doc.

Nos. 88-89.)   In early November 2014, Irish requested another extension of time

to file her response.   The Court granted that request as well, and set the deadline

for Irish's response as December 30, 2014.   (Doc. Nos. 92, 95.)   On December

30, 2014, Irish filed an 87-page response to the defendants' renewed motion.

(Doc. No. 96 (Reply); Doc. No. 96-1 (Supplement to Reply).)   Irish then realized

3

that her initial response likely exceeded the word-count limitations imposed under the Local Rules for the District of Minnesota, and she filed a motion asking the Court to make an exception to that requirement.   (*See* Doc. No. 99 (Mot. for Exemption for Page Limitation of LR 7.1).)   She later withdrew that motion for relief from the word-count limitations in the Local Rules, and she filed a second responsive memorandum on January 4, 2015.   (Doc. No. 100-12 (Withdrawal of Mot. for Exemption for Page Limitations of LR 7.1); Doc. No. 100 (Reply Mem. of Law to Def.'s Mot.) (hereafter "Pl.'s Resp.").)   Along with her responsive memorandum, Irish also submitted a 70-page affidavit (Doc. No. 100-1; Doc. No. 100-2; Doc. No. 100-3), and several exhibits.   (Doc. No. 100-6; Doc. No. 100-7; Doc. No. 100-8; Doc. No. 100-9; Doc. No. 100-10; Doc. No. 100-11.)

As described in the Court's prior report and recommendation, Irish presents five claims for relief in this case, based on various incidents that occurred while she was confined at FCI Waseca.   These claims are as follows:

(1)   that Federal Bureau of Prisons ("BOP") employees failed to provide adequate medical care to Irish for injuries that she allegedly sustained when she fell out of her bed;

(2)   that Irish was not provided with an adequate law library at FCI Waseca;

(3)   that a BOP employee injured Irish by forcing her to perform hazardous manual labor;

(4)   that a BOP employee violated Irish's civil rights by cursing at her, and another BOP employee violated Irish's rights by threatening to

place her in segregated confinement if she tried to prosecute an administrative claim against the employee who cursed; and

(5)   that a BOP employee violated Irish's constitutional rights by forcing her to attend a deposition in a civil lawsuit, even though she had not been subpoenaed to testify.

(*See generally* Doc. No. 1, Compl.)   To determine whether Irish has demonstrated that genuine issues of material fact exist with respect to any of these claims, the Court will consider the defendants' moving papers, declarations, and exhibits (Doc. Nos. 75-83); Irish's second set of responsive papers, submitted on January 4, 2015, including her responsive memorandum, her 70-page affidavit, and her exhibits (Doc. No. 100; Doc. No. 100, Attachs. 1-11); and the defendants' reply memorandum.   (Doc. No. 107.)   As described in more detail below, the Court recommends that the defendants' motion be granted.[1]

## DISCUSSION

### I.   Irish's Procedural Arguments

Irish raises certain procedural arguments that can be addressed before turning to her specific claims.   Specifically, she objects to the defendants' use of

---

[1]   This report and recommendation incorporates substantial portions of the Court's January 3, 2013 report and recommendation (Doc. No. 52), but modifies the earlier decision in some aspects to reflect how Irish has responded, not only to the defendants' motion, but also to the Court's summary-judgment decision that was issued prior to remand.   The remand from the Eighth Circuit did not undermine the reasoning behind this Court's evaluation of the evidence, and thus, all that is left to consider is whether Irish has now demonstrated any genuine issues for trial.

declarations in support of their summary judgment motion.   And she asserts that she has been unable to obtain information from other FCI Waseca inmates that would purportedly support her claims.   For both of these reasons, she argues that it would be improper to grant summary judgment in favor of the defendants.

## A.   Defendants' Use of Declarations Rather than Affidavits

Irish argues that the defendants' motion should be denied in its entirety because the evidence submitted in support of the motion is offered in the form of declarations rather than affidavits.   (Doc. No. 100, Pl.'s Opp'n 1-3.)   She contends that under Local Rule 7.1, when a party files a dispositive motion, the moving party is required to submit "affidavits" in support of that motion, and the defendants' declarations do not comply with this Local Rule.   (*Id.* at 1-2.)

Each of the declarations submitted in support of the defendants' motion is provided pursuant to 28 U.S.C. § 1746.   Section 1746 permits a party to file a declaration made under penalty of perjury "with like force and effect" as an affidavit whenever a rule requires or allows a party to submit an affidavit for support.   28 U.S.C. § 1746 ("Wherever, . . . under any rule . . . any matter is required or permitted to be supported . . . by the sworn . . . affidavit, in writing of the person making the same[,] such matter may, with like force and effect, be supported, . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]").   Because the statute allows a party essentially to substitute an unsworn declaration made under penalty of

perjury for an affidavit whenever that party, by rule, must support its position with an affidavit, the defendants properly relied on declarations in support of their motion.   The Court also notes that Federal Rule of Civil Procedure 56 itself contemplates the use of declarations to support of a party's assertion that a fact cannot be genuinely disputed.   *See* Fed. R. Civ. P. 56(c)(1)(A) (explaining that a party must support its assertion that a fact cannot be or is genuinely disputed by citing to particular parts of, among other things, "affidavits or declarations").   Thus, the defendants have not violated Local Rule 7.1(c)(1)(A) and have properly submitted declarations in support of their motion for summary judgment under Fed. R. Civ. P. 56(c).   The Court will not recommend denying the defendants' motion because it is supported by declarations rather than affidavits.

### B.   Irish's Inability to Obtain Evidence From Other Inmates

Irish also argues that she is at a disadvantage in this litigation because she is prohibited from contacting inmates at FCI Waseca who she contends could help her support her claims.   (Pl.'s Opp'n 3-4, 21, 25, 31.)   She argues that she should be permitted to gather evidence in support of her claims from these other inmates. (*Id.* at 3-4.)   Irish identifies four inmates from whom she proposes to obtain affidavits: Ms. Barney, Ms. Ealom, Ms. Elder, and Ms. Shannon.   (*Id.* at 4.)

The Court construes this argument as a request, under Federal Rule of Civil Procedure 56(d), to defer ruling on the defendants' motion, to deny the motion, or to give her time to obtain the affidavits so that she can justify her opposition to the

defendants' motion.   Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may:
>    (1) defer considering the motion or deny it;
>    (2) allow time to obtain affidavits or declarations or to take
>        discovery; or
>    (3) issue any other appropriate order.

This provision was formerly codified as Rule 56(f).   "To obtain a Rule 56(f) [now

Rule 56(d)] continuance, the party opposing summary judgment must file an

affidavit 'affirmatively demonstrating . . . how postponement of a ruling on the

motion will enable [her], by discovery or other means, to rebut the movant's

showing of the absence of a genuine issue of fact.'"   *Ray v. Am. Airlines, Inc.*, 609

F.3d 917, 923 (8th Cir. 2010) (citation omitted).   In this affidavit the non-moving

party must show "what specific facts further discovery might uncover."   *Anuforo v.*

*Comm'r of Internal Revenue*, 614 F.3d 799, 808 (8th Cir. 2010) (citation omitted).

As explained below, this Court recommends that Irish's request for a Rule 56(d)

continuance be denied.

### 1.    Statements in Irish's Memorandum

Before turning to the contents of Irish's affidavit, the Court notes that in her

memorandum, she makes passing reference to the need for affidavits from her

former fellow inmates "to verify [her] pain and Lt. Omelson['s] craziness."   (Pl.'s

Opp'n 31.)   Irish also indicates that she "can get plenty of former inmates to give

statements as to the harassment Lt. Duncan put [her] through."   (Pl.'s Opp'n 25.)

These statements in Irish's memorandum are not sufficient to warrant a continuance under Rule 56(d).   She has failed to identify "by affidavit or declaration" any specific facts that would be uncovered by discovery from her former fellow inmates.   The vague references to what the former inmates would say about Irish's allegations do not meet Rule 56(d)'s requirements.

## 2.   Ms. Barney's Purported Affidavit

Irish states in her memorandum that she "would like to get [a] statement from Ms. Barney, a former inmate who Lt. Duncan also put in the [Segregated Housing Unit at the prison] for reporting inmate rape."   (Pl.'s Opp'n 25.)   In Irish's affidavit supporting her opposition to the defendants' motion she provides some further detail regarding Ms. Barney.   She states that Ms. Barney "overheard an officer and a fellow inmate having sex [and that Ms. Barney] told [Irish] what she had witnessed."   (Doc. No. 100-1 at 12, Pl.'s Aff.)[2]   She goes on to state that "Ms. Barney was also put in the SHU for reporting the rape."   (Pl.'s Aff. 13.)   According to Irish's affidavit, Ms. Barney gave Irish permission to use her name when Irish reported the incident to an Officer Isaacson.   (*Id.* at 23.)   She then asserts that Ms. Barney was "put in the SHU for reporting the rape."   (*Id.*)   Irish also asserts that Ms. Barney has since been released from prison, but that she

---

[2]   Irish's Affidavit in support of her opposition to the defendants' motion is in the record at Doc. Nos. 100-1, 100-2, and 100-3, but it is sequentially paginated, spanning pages 1-70.   The Court will cite to it as "Pl.'s Aff." followed by the relevant page number.

cannot contact Ms. Barney because Ms. Barney is a felon.   (*Id.* at 25.)

The Court concludes that Irish's discussion in her affidavit about the evidence Ms. Barney could provide is insufficient to justify a continuance under Rule 56(d).   It is not entirely clear to what purpose Irish would use Ms. Barney's affidavit.   Irish seems to believe Ms. Barney's purported affidavit would support her claim that Lieutenant Dunkin retaliated against her when Irish reported an incident of sexual abuse and placed, or threated to place, Irish in the SHU.   (*See* Compl. ¶¶ 34-35.)   There is no factual detail in the record to support a conclusion that any defendant placed Ms. Barney in the SHU as retaliation for Ms. Barney's involvement in reporting the rape of a fellow inmate.   Nor would such retaliation against Ms. Barney necessarily be relevant to Irish's claim that Lieutenant Dunkin retaliated against Irish.   Even if the Court were to conclude that Lieutenant Dunkin's alleged retaliation against Ms. Barney were relevant to Irish's own retaliation claims (perhaps on the theory that Dunkin retaliated against both Irish and Ms. Barney for the same incident), Irish has failed to specify what evidence Ms. Barney would provide that would show that Ms. Barney's involvement in reporting the rape motivated the decision to place Irish in the SHU.   Thus, Irish has failed to show that Ms. Barney's purported affidavit would create a genuine issue of material fact regarding Irish's retaliation claim.   *See Bussey v. Phillips*, 419 F. Supp. 2d 569, 585-86 (S.D.N.Y. 2006) (noting that an inmate failed to raise a genuine issue of material fact concerning his retaliation claim that he was

terminated from a prison job for pursuing a prison grievance when the inmate failed

to provide evidence demonstrating that the refusal to place him back in his former

position was motivated by pursuit of the grievance).   For these reasons, the Court

recommends that Irish's request for a Rule 56(d) continuance so Irish can obtain

an affidavit from Ms. Barney be denied.

### 3.    Ms. Shannon and Ms. Elder's Purported Affidavits

Irish also desires to obtain affidavits from inmates identified as Ms. Shannon

and Ms. Elder.   Irish asserts that she is unable to obtain affidavits from these two

individuals because they are felons.   (Pl.'s Aff. 25-26.)   Irish asserts that both

Ms. Shannon and Ms. Elder witnessed Officer Pena call Irish a derogatory name,

thereby corroborating Irish's allegations that Pena made an offensive remark

directed at Irish.   (*Id.*)   Irish has submitted an exhibit which she asserts is a

written statement from Ms. Shannon that Irish obtained before Irish left

FCI Waseca.     In the unsworn written statement, Ms. Shannon explains that she

and Ms. Elder overheard Officer Pena make an offensive statement in Spanish to

Irish.[3]   (*Id.* at 6, Ex. 1.)

---

[3]      Ms. Shannon's unsworn handwritten statement would generally be
inadmissible hearsay for purposes of summary judgment.   *See Mays v. Rhodes*,
255 F.3d 644, 648 (8th Cir. 2001) (unsworn handwritten accounts by other inmates
claiming to witness events relevant to the plaintiff's claims were inadmissible
hearsay for purposes of summary judgment).   Because Irish has not had an
opportunity to take discovery and asserts that she has been unable to obtain
affidavits from other inmates, the Court has considered this unsworn statement
(Footnote Continued on Following Page)

The Court concludes that Irish has not met the standard for obtaining a Rule 56(d) continuance so she can obtain affidavits from Ms. Shannon and Ms. Elder. As this Court previously explained, "[e]ven if Officer Pena called [Irish] a 'f[***]ing white bitch'" in Spanish, this does not rise to the level of atrocity required for" Irish's intentional infliction of emotional distress claim.   (Doc. No. 52, 1/3/13 R&R at 30.) The affidavits Irish would like to obtain from Ms. Shannon and Ms. Elder would merely corroborate that Pena made the offensive statement.   But even if that fact were conclusively established, Officer Pena's alleged conduct would not be sufficiently outrageous to form the basis of a claim for intentional infliction of emotional distress.

Nor would the affidavits from Ms. Shannon and Ms. Elder alter this Court's prior conclusion that Irish's retaliation claims fail because the defendants did not take any adverse action against her because she engaged in protected activity. (1/3/13 R&R at 31-32.)   Even if Ms. Shannon and Ms. Elder provided affidavits confirming that they heard Officer Pena direct foul language at Irish, such corroboration would not amount to evidence of retaliatory motive.   For these

_____

(Footnote Continued from Previous Page)
from Ms. Shannon as support for Irish's request that the defendants' motion be denied or that a ruling on the motion be postponed.   But, as explained below, even if Ms. Shannon offered the substance of this unsworn statement in affidavit form, its corroboration of Irish's claim that Officer Pena used offensive language toward her would not preclude summary judgment because such evidence would not show conduct rising to the level of atrocity needed to support Irish's intentional infliction of emotional distress claim.

reasons, the Court recommends denying Irish's request for a Rule 56(d)

continuance so she can obtain affidavits from Ms. Shannon and Ms. Elder.

### 4.    Ms. Ealom's Purported Affidavit

Although Irish mentions a former fellow inmate identified as Ms. Ealom in

her responsive memorandum, she does not explain what knowledge Ms. Ealom

has of any facts relevant to Irish's claims.   (Pl.'s Opp'n 4.)   Nor does Irish provide

any detail about Ms. Ealom's purported affidavit testimony in the lengthy affidavit

Irish submitted in opposition to the defendants' motion.   Because there is no

indication of the evidence Ms. Ealom might provide if the Court delayed ruling on

the defendants' motion so she could submit an affidavit, it would be improper to

defer ruling on the defendants' motion for that purpose.   Accordingly, Irish's

request for a Rule 56(d) continuance should be denied.

## II.    Alleged Failure to Provide Adequate Medical Care

Irish's first claim is that after she fell from an upper bunk bed "while she was

a United States Marshal prisoner at North Las Vegas Detention Center (NLVDC) in

Nevada," the BOP did testing on her "but refuse[d] to provide any medical care for

[her]."   (Doc. No. 1, Compl. ¶¶ 11–12.)   Irish contends that she suffered from

short-term memory loss as a result of the fall from the bunk bed, as well as brain

damage, but the BOP refused her treatment for her head injury after she arrived at

FCI Waseca.   In her Complaint, Irish titles this cause of action as "Intentional or

Negligent Infliction of Emotional Distress[;] Cruel and Unusual [P]unishment."   (*Id.*

at 4.)

The Court noted in its prior report and recommendation that proving a claim of intentional infliction of emotional distress requires a plaintiff to prove that a defendant engaged in extreme and outrageous conduct that was "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community" and that this intentional or reckless conduct caused the plaintiff severe emotional distress.   (Doc. No. 52 at 12 (citing *Hubbard v. United Press Int'l., Inc.*, 330 N.W.2d 428, 439 (Minn. 1983), and *Haagenson v. Nat'l Farmers Union Prop. and Cas. Co.*, 277 N.W.2d 648, 652 n.3 (Minn. 1979)).)[4]   The Court recommended that the defendants be granted summary judgment on Irish's intentional infliction of emotional distress claim.   The Court explained that in response to the defendants' motion, Irish submitted no more than unsupported allegations to support her FTCA claim that the defendants negligently or intentionally inflicted emotional distress by refusing to provide medical care for her memory loss.   The defendants, on the other hand, presented unrebutted evidence that they provided substantial medical care to Irish for her memory loss. (Doc. No. 52 at 12-13.)   Further, the Court concluded that there was no evidentiary basis on which to allow a fact finder to decide the issue whether Irish suffered from extreme, severe emotional distress as a result of the defendants'

_____

[4]     Under the FTCA, the substantive law of the state in which the claims arose governs.   28 U.S.C. § 1346.

14

medical treatment.   (*Id.* at 13.)

With respect to Irish's claim of negligent infliction of emotional distress, the Court recommended that the defendants be granted summary judgment because such a claim requires that a plaintiff show that she was within a zone of physical impact created by defendant and reasonably feared for her safety.   (*Id.* (citing *Engler v. Illinois Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005)).)   At the time of the prior R&R, Irish presented no evidence to create a fact dispute on the issue whether she was in a zone of danger of physical impact created by any defendant.   (*Id.*)

Further, the Court recommended that the defendants' motion for summary judgment be granted on Irish's Eighth Amendment claim for inadequate medical care because Irish had not presented any evidence to rebut the defendants' showing that Irish was provided substantial medical care for her memory loss. Thus, there was no genuine fact dispute on Irish's allegation that the defendants were deliberately indifferent to her serious medical needs, and the Court concluded that Irish's real complaint was that she disagreed with the course of treatment that she received.   (*Id.* at 13-17.)

### A.    Incomplete Medical Records

In her opposition to the defendants' renewed summary judgment motion, Irish asserts that she cannot meaningfully respond to the defendants' motion for summary judgment because she has never received complete medical records.

15

(Pl.'s Opp'n 17-19.)   She asserts that: (1) the BOP provided her incomplete copies of her medical records in response to a request she made under the Freedom of Information Act ("FOIA"); (2) the defendants submitted incomplete records in support of their motion for summary judgment; and (3) the defendants have never provided her "testing" data relating to her memory loss.   (*Id.*)   In Irish's affidavit, she asserts that she wanted to obtain this testing data so that it could be sent to a psychiatrist; and she believed that a BOP psychologist could not make an accurate review of such data.   (Pl.'s Aff. 36.)   She also supports her assertion that she submitted a FOIA request for her medical records with two exhibits.   (*Id.* at 35, Exs. 11 & 12.)   And Irish again claims that she never received complete medical records in response to this FOIA request.   (*Id.* at 35.)

As best the Court can tell, Irish's claim that her medical records are incomplete is based on her desire to review data from testing conducted by an intern when Irish was receiving care from Dr. Boncher in December of 2009. (Pl.'s Aff. 38, Ex. 18; Doc. No. 39, Decl. of Eric Everson, Attach. 1, BOP_00096-97; Doc. No. 82, Decl. of Eric Everson, Attach. 1, BOP_00082-85.)   Irish asserts in her affidavit that Dr. Boncher "agreed to do more testing to be able to determine the proper treatment for [Irish's] short term memory loss" after the intern failed to complete the initial testing.   (Pl.'s Aff. 38-39.)   Irish argues that if the BOP had released data from testing of her alleged short-term-memory loss, she would be

16

able to have an independent doctor evaluate the data and then provide an affidavit in support of her claims.   (Pl.'s Opp'n 17.)

In response to Irish's argument about the testing data, the defendants assert that this information from Irish's memory testing is irrelevant.   (Def.'s Reply 2.) They contend that even if the data would aid Irish in rebutting the defendants' showing that Irish had engaged in malingering during a psychological evaluation of her claimed memory impairment, Irish has not made any claim based on misdiagnosis.   (*Id.* (referencing the report of Dr. Kimberly Turner, the conclusions of which are described in the Evenson Decl., Doc. No. 82 ¶ 6).)   The defendants point out that Irish's claims are based on an allegation that she was denied treatment.   (*Id.* at 2.)

The Court construes Irish's argument that she has never received her complete medical records, and specifically the "testing data," to be another request, under Rule 56(d), to defer ruling on or to deny the defendants' motion until Irish has an opportunity to conduct discovery or obtain further information to justify her opposition.   Irish is not entitled to a Rule 56(d) continuance to obtain testing data or more complete medical records because the information is not relevant to the claims that Irish has asserted.   Irish has claimed that the defendants are liable under the FTCA for intentionally or negligently inflicting emotional distress, and for violating the Eighth Amendment by deliberately disregarding her serious medical needs and refusing to provide her treatment for memory loss.   Irish fails to explain

17

how any testing data would constitute evidence that she suffered from extreme or severe emotional distress as a result of the defendants' treatment relating to her memory loss.   Nor does she explain how the testing data would show that she was in a zone of danger of physical impact created by a defendant.   Further, Irish has not explained how testing data would alter this Court's prior conclusion that "she received substantial medical care," including "numerous assessment sessions with the psychology staff;" a course of treatment to assist her, a battery of tests, and a formal psychological evaluation.   (Doc. No. 52 at 15.)   In fact, Irish's complaint about the BOP's failure to provide testing data actually confirms that her Eighth Amendment claim was essentially based on her disagreement "with the psychology staff's assessment and course of treatment" for her complaints of memory loss.   (*Id.* at 15-16.)   Thus, Irish has not presented any basis for the Court to conclude that obtaining the testing data would allow her to present a fact issue with respect to either of her FTCA claims or her Eighth Amendment claim.

For all these reasons, this Court concludes that Irish's request for deferring ruling on the defendants' motion to allow her to obtain testing data should be denied.

**B.     Irish's Argument that the Defendants' Own Exhibits Demonstrate a Genuine Fact Dispute Exists Regarding Her Alleged Memory Loss**

Irish next argues that the defendants' motion for summary judgment on her claims of inadequate medical treatment should be denied because the BOP's own

medical staff cannot agree on her proper diagnosis.   (Pl.'s Opp'n 23-24.)

Specifically, Irish compares statements in the defendants' declarations to an

assessment by Dr. Samuel Willis from May of 2009 in which he concluded that

Irish had short term memory loss.   (Pl.'s Aff. 36, Exs. 13-14.)   Irish argues that

this internal inconsistency makes summary judgment inappropriate.   (*See* Pl.'s

Opp'n 23; Pl.'s Aff. 36-39.)

Irish has failed to show that the records from Dr. Willis create a genuine

issue of material fact regarding her claims for intentional infliction of emotional

distress, negligent infliction of emotional distress, or deliberate disregard of her

serious medical needs.   Dr. Willis' assessment that Irish had short-term memory

loss in May 2009 does not change the fact that Irish has provided no evidence that

would allow a reasonable jury to conclude that she suffered from extreme or

severe emotional distress as a result of the defendants' treatment of her asserted

memory loss.   Nor does Dr. Willis' diagnosis show that the Court needs to have a

trial so that a jury can decide whether Irish was in a zone of danger of physical

impact created by any defendant.   Thus, the defendants are entitled to judgment

as a matter of law on Irish's FTCA claim of intentional infliction of emotional

distress and her claim for negligent infliction of emotional distress.

Further, Dr. Willis' diagnosis again confirms that Irish simply disagrees with

the course of treatment she was provided regarding her complaints of short-term

memory loss.   The diagnosis does not show that any defendant engaged in

conduct that is akin to criminal recklessness.   *See Popoalii v. Corr. Med. Servs.*,
512 F.3d 488, 499 (8th Cir. 2008) (explaining that a deliberate indifference claim
requires a showing that the defendant engaged in conduct that is akin to criminal
recklessness).   Irish has presented no evidence that contradicts the defendants'
showing that she received a great deal of care, including multiple assessment
sessions, a course of treatment, and testing relating to her claimed memory loss.
Accordingly, the defendants are entitled to judgment as a matter of law on Irish's
*Bivens* claim that they violated her Eighth Amendment rights by demonstrating a
deliberate indifference to her serious medical needs.

## III.    Lack of Adequate Law Library Claim

In a report and recommendation dated November 10, 2011, this Court
conducted an initial screening of Irish's complaint and concluded that her
access-to-courts claim, which was based on her allegations that FCI Waseca's law
library was inadequate, should be dismissed for failure to state a claim.   (Doc.
No. 5.)   The Court explained that Irish failed to state a claim against two individual
defendants who have since been dismissed from this action (Warden Nicole
English and Warden Rios), because Irish did not sufficiently allege their personal
involvement in denying her access to the courts by having an inadequate law
library at FCI Waseca.   (*Id.* at 6 ("Plaintiff has not described any specific <u>personal</u>
wrongdoing by either English or Rios.") (emphasis in original).)   The Court went
on to conclude that, in addition to failing to state a claim against English and Rios,

Irish failed to state any actionable claim for denial of access to courts at all.   (*Id.* at

6-7.)   This Court recommended that all of Irish's claims against English and Rios

be summarily dismissed and that those two defendants be dismissed from this

case; it did not specifically recommend that Irish's access-to-courts claim should

be dismissed.   (*Id.* at 9.)   The District Court adopted the November 10, 2011

report and recommendation in January 2012.   (Doc. No. 8.)

When the defendants first moved for summary judgment, they contended

that Irish's "second claim for relief [that] the legal library at FCI Waseca was

constitutionally inadequate" had been dismissed as a result of the November 10,

2011 report and recommendation, which had been adopted by the District Court.

(*See* Doc. No. 33, Def.'s Mem. in Supp. of Mot. to Dismiss or for Summ. J. at 3 &

n.1.)   The defendants did not present any other argument concerning this claim in

their memorandum in support of their motion for summary judgment.   But this

Court again concluded, in its January 3, 2013 report and recommendation

addressing the defendants' summary judgment motion, that Irish failed to state any

actionable claim for relief relating to the FCI Waseca law library.   (Doc. No. 52 at

17-20.)   The Court explained that between the November 10, 2011 report and

recommendation and the January 3, 2013 report and recommendation "nothing

ha[d] changed."   (*Id.* at 18.)

And still nothing has changed since Irish filed her response in this case

following the Eighth Circuit's remand.   In her response to the defendants' motion,

21

Irish essentially repeats the allegations in her complaint.   She again contends that the law library lacked any legal materials relating to the law applicable to National Labor Relations Board (NLRB) proceedings, which she argues prevented her from defending herself in an action brought against her by the NLRB.   (Pl.'s Opp'n 5.) She also argues that because the FCI Waseca law library does not keep NLRB law in its regular collection, BOP officials should have allowed her to access NLRB law on the law library's computer or should have set up such a computer in the law library to allow her access to the NLRB website.   (*Id.* at 6-7.)   Further, Irish asserts that FCI Waseca should have had an attorney and legal staff capable of evaluating what legal materials would be needed to provide meaningful, effective, and adequate access to the courts with respect to each individual prisoner's case. (*Id.* at 10.)   Irish asserts that the BOP's failure to do so in her case caused her a significant financial injury because the NLRB ultimately obtained a judgment against her in excess of $1.7M.   (*Id.* at 5, 7.)   In support of this claim, Irish attaches to her affidavit an unfavorable decision of the NLRB.   That decision describes the reasons why the NLRB ruled against Irish and issued an order requiring her to provide a remedy for a long list of individuals who had been harmed by her conduct.   (Pl.'s Aff., Ex. 10.)

None of this requires an outcome different than the one this Court has previously recommended.   The constitutional right of access to the courts is infringed when a prison official "actively interfer[es] with inmates' attempts to

22

prepare legal documents," but prisoners do not have "abstract freestanding rights to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Nothing in Irish's response to the defendants' motion for summary judgment demonstrates that her claim regarding FCI Waseca's law library involved the active interference with her participation in any NLRB case by any specific prison official. This is a *Bivens* claim, and Irish has still not alleged that any individual defendant violated her rights. She cannot bring this claim against the BOP because sovereign immunity prevents her from obtaining a judgment for damages against the United States on a claim that her constitutional rights were violated. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) ("It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."); *Jackson v. Fed. Bureau of Prisons*, No. CIV. 06-1347 MJD/RLE, 2007 WL 843839, at *8 (D. Minn. Mar. 16, 2007) ("A Federal prisoner in a BOP facility may bring a *Bivens* claim against an individual officer, subject to the defense of qualified immunity, but 'the prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP * * * with respect to the alleged constitutional deprivation, his only remedy lies against the individual.'" (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001))). For these reasons, Irish's access-to-courts claim fails.

Moreover, Exhibit 10 to Irish's affidavit demonstrates that Irish was able to present arguments about the propriety of the NLRB proceedings against her while

she was confined at FCI Waseca.   The NLRB's decision notes that the jury verdict

in Irish's criminal case came on November 6, 2008.   It describes how, four days

later, she filed a *pro se* letter with the NLRB in which she claimed that: (1) she had

not done business as an individual; (2) she should not have been included as an

individual in the NLRB proceeding; (3) all the companies against whom the NLRB

matter was going forward were out of business; and (4) the NLRB lacked

jurisdiction.   (Pl.'s Aff., Ex. 10 at 1 & n.4.)   The document goes on to describe

how the NLRB had made decisions unfavorable to Irish before she was ever

convicted in her criminal case, and Irish does not claim that the alleged lack of

NLRB-related legal materials at FCI Waseca caused these pre-conviction

decisions to go against her.   (*Id.* at 2 n.5 (indicating that in August 2007 the United

States District court for the District of Nevada issued a temporary injunction

against Irish's companies in the NLRB proceeding and that in April 2008, the court

held that Irish was in civil contempt for willfully failing to comply with that

injunction); *id.* at 3 n.9 (describing how the NLRB had ruled that Irish was the alter

ego of all the corporate respondents in the NLRB proceeding in April 2008, which

is several months before Irish's conviction).)   This suggests that, even if Irish had

identified an individual prison official against whom she was bringing her

access-to-courts claim, any defendant in this case would be entitled to summary

judgment on such a claim.   Irish has not presented any evidence demonstrating a

genuine fact dispute as to whether the alleged lack of legal resources relating to

24

NLRB proceedings at FCI Waseca's law library caused her to lose the opportunity to litigate any proceeding before the NLRB.   *See Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (access-to-courts claim was properly dismissed where prisoner "offered no facts" showing that alleged lack of legal resources actually "prejudiced her in a legal case").

Based on the foregoing, this Court concludes that the defendants are entitled to judgment as a matter of law on Irish's access-to-courts claim.

## IV.   Work-Related Injury Claim

In her third claim for relief, Irish contends that she was subject to cruel and unusual punishment when "Lieutenant Omelson made her jump down 7 ft. window wells to pick up trash," when "[she] was then pulled up by [her] arms over the railings[,]" and when she was denied medical treatment for back, neck, shoulder, and head pains arising from the incident.   (Doc. No. 1, Compl. ¶¶ 25–27.) Specifically, she asserts that she was denied medical treatment for ten days after the incident even though she was in extreme pain and, after that, she was told that she had to buy pain medicine at the prison commissary even though she was indigent.   (Id. ¶¶ 27–28.)   Irish bases this claim on both the FTCA (alleging the torts of intentional or negligent infliction of physical harm and intentional or negligent infliction of emotional distress), and *Bivens* (alleging cruel and unusual punishment in violation of the Eighth Amendment).

25

In its January 3, 2013 report and recommendation, this Court concluded that the defendants were entitled to judgment as a matter of law on this claim.   (Doc. No. 52 at 20-25.)   The Court concluded that the defendants were entitled to summary judgment on Irish's FTCA claims because the unrebutted evidence, including Irish's own statements about the nature of the injury, established that Irish's injuries were suffered during the performance of work assignments rather than as punishment for not getting along with her roommate, which Irish asserted in her complaint.   (*Id.* at 21-23.)   The Court also recommended granting judgment in the defendants' favor on Irish's Eighth Amendment claim under *Bivens* because Irish failed to identify anyone who deliberately disregarded her medical needs and because the defendants demonstrated that Irish received extensive medical treatment for her alleged injuries as a result of that incident.   (*Id.* at 23-25.)

In her response to the defendants' motion for summary judgment, Irish states that she has "always stated that [her] injury with the window wells was not [her] work assignment."   (Pl.'s Opp'n 26.)   The Court interprets Irish's statement as a response to the defendants' argument that Irish herself admitted the injuries based on which she asserts her FTCA claim were work related.   As noted in the Court's January 3, 2013 report and recommendation, on at least two separate occasions, Irish reported to medical staff at the prison that her injury was work-related.   (Doc. No. 52 at 23 (citing Doc. No. 34, Def.'s Ex. List, Ex. 5 at 13 of

81 & 3 of 81; *see also* Doc. No. 77, Def.'s Ex. List, Ex. 5 at 13 of 81 & 3 of 81.)

Further, in an exhibit attached to Irish's own complaint she described this injury as

a "work related injury."   (Doc. No. 1-1 at 17.)   Irish does not allege that the

exhibits provided by the defendants inaccurately reflect her own statements.   Nor

does Irish contend that she never made the statement reflected in the exhibit she

attached to her complaint.   Rather, Irish now presents the argument that she has

never said her injury was work-related as a last-ditch effort to avoid summary

judgment.   Even if this statement were included in her affidavit, this Court would

recommend that, under these circumstances, it be disregarded because it is

similar to a sham affidavit presented solely to prevent judgment against her on this

claim.   *See Ellison v. BHBC Nw. Psych. Hosp.*, Civil No. 11-5106, 2013 WL

1482199, at *2 n.3 (E.D. Pa. Apr. 9, 2013) (extending the sham-affidavit doctrine to

apply to an unsworn written statement in the record that was directly contradicted

by a subsequent affidavit and finding that the affidavit "fits the general mold of a

sham affidavit" because it was clearly offered for the purposes of summary

judgment); *but see Stewart v. Alameida*, 418 F. Supp. 2d 454, 466 (N.D. Cal. 2006)

(concluding that summary judgment was not appropriate where inmate's

statement in affidavit was inconsistent with moving party's documentary evidence

that included statements by inmate contradicted by his affidavit).   Based on the

record before the Court, no reasonable fact finder could conclude that Irish's injury

claim was not work-related, and as the Court concluded in its January 3, 2013

27

report and recommendation, it concludes again here that "there is no triable issue

over the fact that the injury was work related and that [Irish] cannot maintain a

claim under the FTCA because her exclusive remedy against the government is

the Inmate Compensation Act."   (Doc. No. 52 at 23.)

The defendants are also entitled to judgment as a matter of law on Irish's

*Bivens* claim asserting that Lieutenant Omelson subjected her to cruel and

unusual punishment by denying her medical care.   In neither the responsive

memorandum nor in her affidavit has Irish pointed to any evidence that changes

this Court's prior conclusion that her medical records demonstrate that she

"received extensive medical treatment for her back injury, including records

showing that she was treated by medical professionals on April 7, 2010, April 27,

2010, May 19, 2010, June 16, 2010, July 27, 2010, and August 20, 2010."   (Doc.

No. 52 at 24-25 (citing Doc. No. 24, Ex. List, Ex. 5.)   Irish has not come forward

with evidence in response to the defendants' motion to show that any defendant in

this case was deliberately indifferent to her serious medical needs and thus

inflicted cruel and unusual punishment on her.   Rather, not unlike Irish's

inadequate medical care claim in her first claim for relief, she is really complaining

about the course of treatment she received, a claim which is not actionable under

the Eighth Amendment.

In addition, Lieutenant Omelson is entitled to judgment as a matter of law on

Irish's *Bivens* claim that Omelson assigned Irish to clean the window wells as

28

punishment for having a disagreement with her cellmate even though Omelson knew such work would present a risk to Irish's health.   There is no evidence in the record to rebut the defendants' showing that Irish had never been on any work restrictions, or that she told Omelson she could not physically perform the work. (Doc. No. 77, Ex. List, Ex. 5, Med_00047, Med_00280-82, Med_00285 (medical records showing no work restrictions); Doc. No. 83, Decl. of Pamela Omelson ¶ 9 ("[Irish] never advised me that she had suffered work related injuries or that she was subjected to unsafe conditions while she performed her extra duty work assignment.").)   Thus, there is no basis for a reasonable jury to conclude that Omelson "knew of and disregard[ed] an excessive risk to inmate health or safety." *Moore v. Moore*, 111 Fed. App'x 436, 438 (8th Cir. 2004).

For all these reasons, the defendants' summary-judgment motion should be granted as to Irish's third claim for relief.

## V.   Claims of Retaliation

In her fourth claim, Irish seeks damages from Officer Pena and Lieutenant Dunkin based on claims of harassment, intentional or negligent infliction of emotional distress, and cruel and unusual punishment.   Irish alleges that Officer Pena called her a derogatory term in the Spanish language.   (Compl. ¶ 34 ("Plaintiff was called a pinche guera (f[***]ing white bitch) by Officer Pena.").)   She asserts that Lieutenant Dunkin coerced her into dropping her complaint about Officer Pena's conduct by threatening to confine her in the Special Housing Unit

("SHU") if she did not drop her complaint.  (*Id.* ¶ 35.)  Further, Irish asserts that she was retaliated against by Lieutenant Dunkin for reporting a sexual assault involving a guard and another inmate at FCI Waseca.  (*See id.* ¶ 42; Pl.'s Aff. 10-13, 18 (describing alleged retaliation for reporting a sexual assault).)  Irish also identifies two additional incidents in her complaint that she claims were harassment in retaliation for her making complaints: (1) that she was not allowed to see her son for a period of time because of the delay in adding her son to her visitor list; and (2) that she was denied transfer to a FBOP prison facility in Nevada that was closer to her son.  (*Id.* ¶ 36.)

The Court previously recommended that the defendants be granted summary judgment on Irish's retaliation claims.  (Doc. No. 52 at 25-34.)  The Court explained that Irish's claim under the FTCA for intentional infliction of emotional distress failed because Irish presented no evidence that any individual defendant engaged in extreme and outrageous conduct that was of a type to prove an essential element of such a tort claim.  (*Id.* at 25-26.)  The Court also concluded that Irish was not within a zone of physical impact created by any defendant, and she never reasonably feared for her physical safety, thereby defeating her claim for negligent infliction of emotional distress.  (*Id.* at 30.)  The Court also concluded that the defendants were entitled to summary judgment on Irish's claim that the alleged retaliation violated her Eighth Amendment rights because she presented no evidence that could allow a reasonable jury to conclude

that any defendant engaged in conscience-shocking by inflicting pain on Irish

unnecessarily and wantonly.   (*Id.* at 30-31.)

### A.  Irish's FTCA Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Irish's claims under the FTCA seek to recover on tort theories for which she

has failed to provide any evidence creating a genuine issue of material fact.   In

responding to the defendants' motion, Irish has still not come forward with any

evidence to support her intentional infliction of emotional distress claim.   She has

provided no evidence that any of the defendants engaged in extreme and

outrageous conduct of the kind that is necessary to prove such a claim.   Although

Irish has now provided some evidence that would support her allegation that

Officer Pena called her a derogatory term, even if a reasonable jury could conclude

that Officer Pena made the insulting statement, "this does not rise to the level of

atrocity required for this tort claim."   (Doc. No. 52 at 30.)   And although Irish has

presented the sworn statements in her affidavit that Lieutenant Dunkin did threaten

to place her in the SHU if she did not drop a complaint about sexual abuse (*see*

Pl.'s Aff. 8-9, 18), even if that conduct were sufficiently outrageous to satisfy one

element of a claim for intentional infliction of emotional distress, Irish has

presented no evidence from which the Court could conclude that she did, in fact,

suffer the degree of severe emotional distress necessary to sustain such a claim.

*See Hubbard*, 330 N.W.2d at 439 (explaining in adopting the elements of

intentional infliction of emotional distress from the Restatement (Second) of Torts §

46 that a "complainant must sustain a . . . heavy burden of production in his

allegations regarding the severity of his mental distress[, and that recovery for this

tort is allowed only where severe emotional distress] 'is so severe that no

reasonable man could be expected to endure it'") (quoting Restatement (Second)

of Torts § 46 comment j (1965)).   Irish presented no evidence that she has ever

sought or received treatment for severe emotional distress as a result of this

incident.   In fact, she provides no detailed evidence of the nature of any emotional

distress at all.

Irish has also failed to come forward with any evidence that would support

her claim for negligent infliction of emotional distress.   In fact, Irish's responsive

memorandum and her affidavit confirm that she was never within a zone of

physical impact created by either Officer Pena or Lieutenant Dunkin.   (Pl.'s Aff.

4-5 ("I never made any allegation that Officer Pena ever physically sexual [sic]

abused me in 2009 or any time afterwards."); *id.* at 11 (same regarding Pena); *id.*

at 7 (describing Dunkin's threats as "verbal").)   There is no factual dispute with

respect to either of these FTCA claims that requires a fact finder's consideration.

### B.    Irish's Eighth Amendment *Bivens* Claim

Turning to Irish's Eighth Amendment claim under *Bivens*, the Court similarly

concludes that the defendants are entitled to judgment as a matter of law.   As

explained in the Court's prior report and recommendation, "'[a]fter incarceration,

only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" (Doc. No. 52 at 30-31 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).)   Irish has submitted no evidence to change the Court's conclusion that Officer Pena's derogatory remark was not the type of conduct that could give rise to an Eighth Amendment violation. Nor has Irish provided any evidence that she was in pain as a result of Officer Pena's or Lieutenant Dunkin's alleged conduct.   *See Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) ("To prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused "pain" and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind."); *see also Orange v. Ellis*, No. 08-224-JVP-DLD, 2009 WL 454253, at *3 (M.D. La. Feb. 23, 2009) (concluding that calling an inmate a snitch and bitch was verbal abuse that did not give rise to an Eighth Amendment claim); *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.").

To the extent Irish claims that her right not to be subjected to cruel and unusual punishment under the Eighth Amendment was violated by Lieutenant Dunkin's alleged threats to place her in segregated confinement if she did not drop her complaint against Officer Pena (or that she was actually placed in the SHU),

the Court concludes that no reasonable fact finder could find in Irish's favor.   Irish

has presented no evidence that any such threats or actual confinement in the SHU

at FCI Waseca involved the unnecessary and wanton infliction of pain or that the

conditions in the SHU offended evolving standards of decency.   *See Hudson v.

McMillian*, 503 U.S. 1, 5, 8 (1992) (explaining that the Eighth Amendment protects

prisoners from cruel and unusual punishment in the form of "unnecessary and

wanton infliction of pain" and conduct that offends "evolving standards of

decency").

For these reasons, the District Court should grant the defendants' motion for

summary judgment with respect to these Eighth Amendment claims.

### C.   Irish's Retaliation Claims

#### 1.   Delay in Adding Irish's Son to a Visitor List and Refusal to Transfer Irish to a Prison Near Her Son

Irish has not presented any evidence that would change this Court's

conclusion that the defendants are entitled to judgment as a matter of law on her

retaliation claims regarding the BOP's delay in adding her son to a visitor list and

its refusal to transfer her to a prison camp in Nevada.   The Court previously

concluded that "[t]he delay in visitation rights for her son was for good reason

because of the criminal charges of child abuse that had been filed against her."

(Doc. No. 52 at 32 (citing *Overton v. Bazzeta*, 539 U.S. 126, 133-35 (2003)

(maintaining internal security and protecting child visitors from harm are rationally

related to a limitation of visitation rights).)   And the Court concluded that "[t]he denial of Plaintiff's request for transfer to a prison camp in Nevada was not an adverse action because inmates cannot choose which facility will house them." (*Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (stating that "[t]ransfers between institutions . . . are made for a variety of reason and often involve no more than informed predictions as to what would . . . best serve institutional security or the safety and welfare of the inmate," and concluding that "the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another").)   Nothing in Irish's response or in her affidavit creates a genuine issue for trial with respect to either of these claims.   She has presented no evidence that would alter either of the Court's prior conclusions. The defendants are entitled to judgment as a matter of law on these retaliation claims.

## 2.   Irish's Retaliation Claims Against Lieutenant Dunkin

This Court has reviewed Irish's affidavit to determine whether Irish has presented any evidence to support her claims that Lieutenant Dunkin threatened to place her in the SHU if she did not drop her complaint that Officer Pena made an insulting comment toward her and that Dunkin threatened to place her in the SHU in response to her complaints about an incident of sexual assault.   First, with respect to Irish's retaliation claim following her report of Officer Pena's insulting behavior, Irish states that she told "SIS" about Officer Pena's derogatory comment

in 2009, and SIS followed up by initiating an investigation.   (Pl.'s Aff. 3 ("My

original complaint about Officer Pena was in 2009."); *see id.* at 5 (stating that she

reported Pena's comment "immediately" and that Dunkin "investigated it pretty

soon after I reported it")).)   After she made the report, Irish asserts that Lieutenant

Dunkin "threatened to put [her] in the SHU" if she refused to drop her complaint

against Pena.   (Pl.'s Aff. 8, 9.)   Further, Irish states that at first she refused to

drop the complaint, and, in response, Lieutenant Dunkin began escorting her to

the SHU.   (*Id.* at 9.)   At that point, she asserts that she "caved," meaning that she

agreed to drop the complaint to avoid being placed in the SHU.   (*Id.*)

As for Irish's claim that Lieutenant Dunkin retaliated against her for reporting

a sexual assault, she asserts that Dunkin threatened to place her in the SHU after

her brother wrote a letter requesting that she be protected because she had

reported a sexual relationship between an inmate and a guard at FCI Waseca.

(Pl.'s Aff. 9-10.)   Irish asserts that another inmate, Ms. Barney, overheard the

guard engaging in a sexual act with a third FCI Waseca inmate.   (Pl.'s Aff. 12.)

According to Irish, both she and Ms. Barney feared being retaliated against by

Lieutenant Dunkin if they reported the allegations directly to BOP officials.   (Pl.'s

Aff. 12.)   Thus, Irish called her brother to explain the situation to him, and her

brother contacted the Office of the Inspector General ("OIG") by writing letters

about the incident.   (Pl.'s Aff. 12-13.)   Irish attaches a copy of her brother's

letters, the first of which informs the OIG that Irish had told him about a corrections

36

officer engaging in a sexual relationship with another prisoner.   Her brother's

letter tells the OIG that Irish "is frightened and requests urgent action to protect her

in this dangerous situation."   (Pl.'s Aff. 10, Ex. 2 at 1.)   Irish alleges that the

mailroom provided a copy of her brother's letter to Lieutenant Dunkin, at which

point Dunkin called Irish into his office and asked her if she feared for her safety.

(Pl.'s Aff. 18.)   Irish asserts that after Dunkin became aware of the letter, Dunkin

"offered to put [Irish] in the SHU if [she] feared for [her] safety, but [she] was afraid

of Dun[kin] and other officers mentioned in the OIG letter making threat [sic] to

[her]."   (Pl.'s Aff. 10.)

Although Irish does not mention the First Amendment in her complaint or in

her memorandum of law, her retaliation claims against Lieutenant Dunkin appear

to be based on a theory that Dunkin's conduct violated that constitutional

provision.   The defendants seem to acknowledge as much in their reply

memorandum, and they contend that these retaliation claims fail as a matter of

law.   (Def.'s Reply 12-14 (citing *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir.

1995) (addressing First Amendment protections against retaliation and arguing

that Dunkin is entitled to qualified immunity on these claims).)

To establish a prima facie case of First Amendment retaliation, Irish must

show that (1) she exercised a constitutionally protected right; (2) she was

disciplined; and (3) her exercise of the right motivated the discipline.   *Meuir v.*

*Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007).   Irish bears a

heavy evidentiary burden, and mere allegations that Lieutenant Dunkin's conduct was retaliatory will not suffice. *See id.* (citations omitted). Irish must present "affirmative evidence" of Dunkin's retaliatory motive. *See Crawford–El v. Britton*, 523 U.S. 574, 600 (1998); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir.2007). Irish may not create a fact dispute with bare allegations and speculation. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir.1996). Even if Irish makes a prima facie showing, Lieutenant Dunkin can still avoid liability if he shows that he would have acted in the same way in the absence of any protected conduct. *See Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007) (once the plaintiff has established a prima facie case, "the burden shifts to the defendant to demonstrate that the same . . . action would have been taken in the absence of protected activity").

The First Amendment forbids retaliation for protected speech. *See Crawford–El*, 523 U.S. at 592. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, "[j]ust as prison officials cannot lawfully transfer a prisoner for retaliatory reasons alone, so they cannot impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." S*prouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Prison officials are also not permitted to threaten disciplinary sanctions in response to a prisoner's

exercise of a constitutional right.   *See Burgess v. Moore*, 39 F.3d 216, 218 (8th

Cir. 1994) (holding that threats of retaliation that would prevent an ordinary person

from engaging in protected activity are sufficient to satisfy a First Amendment

retaliation claim).

Even taking the facts and the reasonable inferences in Irish's favor, this

Court concludes that Lieutenant Dunkin is entitled to judgment as a matter of law

for both of Irish's retaliation claims against him.   Although Irish asserts in her

affidavit that Lieutenant Dunkin threatened to place her in the SHU if she did not

drop her complaint about Officer Pena's derogatory remark, this Court concludes

that she has produced no affirmative evidence of retaliatory motive to create a

genuine factual dispute with the evidence presented by the defendants.   Irish has

not provided any details about the nature of the alleged "threats" that Dunkin made

when she met with Dunkin to discuss her complaint about Officer Pena's

comments.   The defendants have explained that during the meeting in November

2010 where Irish's complaint about Officer Pena was discussed, Officer Dunkin

informed her that she could be placed in the SHU for protective reasons if she

feared for her safety.   (Doc. No. 82, Decl. of Eric Everson ¶ 12.)   The defendants

have also presented evidence that Irish was informed that she could be subject to

discipline by being placed in the SHU if her claim was inaccurate or exaggerated

and amounted to a violation of prison rules.   (*Id.*)   Although Irish repeatedly refers

to Dunkin's response to her complaint as "threats," she does not dispute the

specific nature of the discussion about placement in the SHU presented by the

defendants.[5]   Rather, she rests on bare allegations of threatening conduct and

conclusory statements to allege that Lieutenant Dunkin had a retaliatory motive in

discussing placement in the SHU.   In other words, Irish has not shown affirmative

evidence that would require a jury to decide whether Lieutenant Dunkin had a

retaliatory purpose in discussing the SHU with her in response to her complaints

about Officer Pena.   *See Dasta v. Shearin*, Civil No. 04-4475 (MJD/RLE), 2007

WL 4952768, at *23 (D. Minn. Nov. 15, 2007) (report and recommendation

---

[5]      Irish states in her affidavit that she complained about Officer Pena's conduct
for nearly a year after he made the derogatory statement in 2009, but it is not at all
clear from the record that she submitted anything like a formal prisoner grievance
relating to Officer Pena's conduct before late 2010.   (*See* Pl.'s Aff. 4-5 (stating that
Irish first complained about Pena's comment in 2009 after it occurred); Doc.
No. 1-1 at 53 (BOP grievance form dated September 30, 2010 in which Irish
discusses complaints about Officer Pena calling her a derogatory name); Doc.
No. 78, Decl. of Becky Bobo ¶ 6 (discussing Irish's filing of an inmate
administrative remedy request relating to Officer Pena's use of a derogatory term
in June 2011).)   Taking Irish's allegations in her affidavit in the light most favorable
to her, the Court can conclude that she made informal complaints to a correctional
officer about Officer Pena's conduct before filing a formal grievance.   Irish has not
presented, and the Court has not found, any precedent establishing that such
informal complaints constitute protected activity under the First Amendment right
to petition the government for a redress of grievances, and the absence of any
detail in Irish's affidavit about the nature of her informal complaints convinces this
Court that she has failed to demonstrate she engaged in protected activity before
filing a formal grievance.   *See Booth v. Pence*, 354 F. Supp. 2d 553, 561 n.6 (E.D.
Pa. 2005) (concluding that "without more detail as to the nature of [the plaintiff's
informal] complaint, [the court] would be reluctant to hold that any informal
complaint from an inmate to a [corrections officer], which might be nothing more
than gossip regarding what one inmate thinks . . ., is protected activity under the
First Amendment right to petition").

concluding that inmate failed to show trialworthy issue on first amendment retaliation claim where defendants presented some evidence explaining that they had a non-retaliatory reason to conduct an allegedly retaliatory search of the inmate's cell).   Accordingly, this Court concludes that Lieutenant Dunkin is entitled to judgment as a matter of law on this retaliation claim.

As for Irish's claim that Lieutenant Dunkin retaliated against her because she reported that an FCI Waseca guard was having a sexual relationship, Irish has presented no affirmative evidence that Lieutenant Dunkin had a retaliatory motive when he made Irish an offer of protective custody.   In fact, Irish acknowledges that Lieutenant Dunkin made this offer of protective custody in the SHU when he became aware of her complaint via her brother's letter.   Thus, the defendants have presented evidence that Lieutenant Dunkin had a non-retaliatory reason for discussing an offer of protective custody with Irish when it came to his attention that she had made a complaint about a sexual assault in the prison.   Her assertion that such an offer of protective custody was nevertheless retaliatory amounts to no more than bare allegations and speculation.   Thus, Irish has come forward with no evidence that would require a jury to decide whether Lieutenant Dunkin's offer of protective custody had a retaliatory purpose, and Dunkin is entitled to judgment as a matter of law on this claim.

VI.    **Claim Regarding Deposition**

In Irish's fifth claim for relief she asserts that she was harassed during a

deposition.   She alleges that the defendant Officer Grant Duffy "forced [her] to go

to a civil deposition against her will."   (Doc. No. 1, Compl. ¶ 47.)   She alleged that

she was not ordered by any court to attend a civil deposition, nor was there a

subpoena served on her.   (*Id.*)   She says that she told Officer Duffy, a

correctional counselor for the BOP at FCI Waseca, that she did not want to go to

the deposition, but Officer Duffy told her that "unless she went to the deposition

she would be put in the 'SHU' (24 hour lockdown)."   (*Id.* ¶¶ 48–49.)   Irish

therefore went to the deposition.   (*Id.* ¶ 49.)   Irish further alleges that she was told

that she would be allowed to leave the deposition if she told the opposing attorney

that she would not testify without her attorney present.   (*Id.* ¶ 50.)   But she

asserts that "the deposition record shows that [she] was not allowed to leave [the]

deposition as promised and was continually harassed by opposing counsel."   (*Id.*

¶ 51.)   Irish also contends that Officer Duffy testified against her at the deposition.

(*Id.* ¶ 49.)

In its January 3, 2013 report and recommendation, the Court

recommended that the defendants were entitled to summary judgment on this

claim.   (Doc. No. 52 at 34-38.)   The Court explained that: (1) Irish presented no

evidence to rebut the defendants' showing that no defendant intentionally or

negligently inflicted emotional harm upon her; (2) no defendant engaged in the

type of outrageous conduct that could be construed as intending to inflict substantial emotional harm on Irish; and (3) Irish was never put in any danger of physical injury, thereby negating her negligent infliction of emotional distress claim.   (*Id.* at 37.)   The Court also concluded that Irish had no *Bivens* claim against any defendant because there was no showing that her Eighth Amendment right to be free from cruel and unusual punishment was violated based on her allegations and the unrebutted evidence submitted by the defendants.   (*Id.* at 37-38.)   And the Court recommended that the defendants be granted summary judgment on Irish's claims regarding harassment and retaliation relating to the deposition because she produced no evidence showing that any defendant took an action adverse to her because she engaged in constitutionally protected activity.   (*Id.* at 38.)

In her response to the defendants' motion, Irish contends that nothing in the defendants' supporting papers shows that she was under a court order to appear for a deposition and that the defendants have failed to offer any evidence that she agreed to sit for the deposition.   (Pl.'s Opp'n 4-5.)   She argues that in the absence of such proof, the defendants engaged in conduct that is prohibited by Federal Rule of Civil Procedure 30.   (*Id.* at 4-5, 23.)   Construing her affidavit liberally, Irish asserts that she never received a copy of any court order and that she never consented to appear at any deposition.   (Pl.'s Aff. 26-27.)   Federal Rule of Civil Procedure 30(a)(2)(B) provides that, to depose a person, including a

party to a lawsuit, "[a] party must obtain leave of court . . . if the deponent is

confined in prison."   To the extent that Irish argues that Officer Duffy, or any other

defendant is liable, because they tried to take her deposition in violation of Rule

30(a)(2)(B), this Court concludes that, even if no court ever granted leave to

depose her and a violation of the Rule occurred, that conduct would not, by itself

entitle her to relief on her tort claims for intentional infliction of emotional distress or

negligent infliction of emotional distress under the FTCA.   Nor would such

conduct entitle her to relief on her *Bivens* claim that she was subjected to cruel and

unusual punishment in violation of her Eighth Amendment rights.   The evidentiary

record before the Court includes no documentary, testamentary, or other evidence

showing conduct that would allow a reasonable fact finder to find in Irish's favor on

any of these claims.

        Irish asserts that there is a genuine fact dispute with regard to her assertion

that Officer Duffy threatened her with confinement in the SHU if she did not attend

the deposition (Pl.'s Opp'n 23), although she does not cite to any portion of the

record before the Court to support this assertion.   In her affidavit, the Court has

located the following statements: "I was told by Officer Duffy that if I did not attend

the deposition, he would put me in the SHU"; "Officer Duffy threatened to put me in

the SHU if I did not go to the deposition"; and "I would not have gone to the

deposition had I not been told I would go to the SHU if I did not go."   (Pl.'s Aff. 27.)

Officer Duffy denied making any such threat.   (Doc. No. 81, Decl. of Grant Duffy

44

¶ 13.)   Taking this evidence and the reasonable inferences that may be drawn from it in Irish's favor (as the Court must since Irish is the nonmovant), the Court still concludes that the defendants are entitled to judgment as a matter of law on Irish's claims for intentional infliction of emotional distress and negligent infliction of emotional distress under the FTCA.   Even if a threat to place an inmate in the SHU for an unjustified reason would amount to the type of outrageous or negligent conduct that would sustain such a tort claim under Minnesota law, there is still a complete absence of proof from Irish that she suffered the type of severe emotional distress that is necessary to sustain such a claim.   *See K.A.C. v. Benson*, 527 N.W.2d 553, 557, 560 (Minn. 1995) (explaining that both intentional and negligent infliction of emotion distress require a plaintiff to show that she suffered severe emotional distress as a result of the conduct involved).

Having considered all the evidence in the record, the Court again concludes that Irish "sets forth no facts to suggest that she was retaliated against because she engaged in a constitutionally protected activity."   (Doc. No. 52 at 38.)   Irish has also not presented any evidence that would create a genuine fact dispute that would compel this Court to change its earlier conclusion that her allegation that Officer Duffy testified against her "is belied by the deposition transcript that shows that all that Officer Duffy did was to identify Irish for the deposition record."   (*Id.*)

For all the foregoing reasons, the defendants are entitled to judgment as a matter of law on Irish's claims based on what occurred during the deposition referenced in her complaint.

## RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 75), be **GRANTED**; and

2.     This case be **DISMISSED WITH PREJUDICE**.


Date:   February 9, 2015


                                          *s/ Jeffrey J. Keyes*
                                          JEFFREY J. KEYES
                                          United States Magistrate Judge


Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 23, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within **fourteen days** after service thereof.   All briefs filed under this rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions of the Report to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.